Opinion issued October 14, 2004


 
 



 
 

 
 





     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00327-CR
NO. 01-04-00739-CR
NO. 01-04-00740-CR




TERRY RHODES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 278th District Court
Walker County, Texas
Trial Court Cause No. 20778C, Counts I, II, and III






O P I N I O N

          In one indictment containing three separate counts, the State charged appellant
Terry Rhodes with the felony offenses of escape, burglary of a habitation, and theft. 
The indictment includes two punishment enhancement paragraphs. The first alleges
a previous conviction for felony escape in Smith County, and the second alleges a
previous conviction for felony burglary of a habitation. Rhodes pleaded guilty to the
charged offenses, and not true to the enhancement paragraphs. The trial court
convicted Rhodes of the three offenses, and a jury found both enhancement
paragraphs true. The jury assessed punishment at 33 years’ confinement for the
escape, 25 years’ confinement for the burglary, and 25 years’ confinement for the
theft. The trial court ordered the three convictions to run consecutively with a 45-year prison sentence Rhodes is serving for an aggravated sexual assault conviction. 
          We conclude that Rhodes “was an inmate in the institutional division of the
Texas Department of Criminal Justice” at the time he committed his earlier Smith
County escape offense, and thus the trial court in the earlier escape case should have
run that escape sentence consecutively to the sentence for aggravated sexual assault
Rhodes was then serving. Tex. Code Crim. Proc. Ann. art. 42.08(b) (Vernon Supp.
2004). It did not. As such, as the State concedes, the earlier sentence was not
“authorized by law,” under Fullbright v. State, 818 S.W.2d 808 (Tex. Crim. App.
1991). We therefore conclude that the State cannot use Rhodes’s earlier Smith
County escape conviction to enhance Rhodes’s sentences for the three convictions in
this case, and we remand for a new punishment hearing.
Facts and Procedural Background
Facts
          In August 2000, Rhodes escaped from the Wynne Unit of the Texas
Department of Criminal Justice – Institutional Division (TDCJ-ID) in Walker County,
Texas. He stole a diesel semi-truck and drove it through the fence surrounding the
prison, undeterred by a prison guard’s firing of gunshots at the truck. Rhodes
abandoned the truck at a truck stop. Rhodes evaded capture for approximately one
week. During that time, Rhodes broke into a trailer, and stole food and clothing. He
also stole a tractor, which he drove into a swamp, whereupon authorities apprehended
him.
Previous Criminal History
          The resolution of this appeal involves Rhodes’s enhancement convictions, and
thus we detail his criminal record. In January 1997, Rhodes pleaded guilty and was
convicted of burglary of a habitation in Angelina County, Texas and was sentenced
to three years confinement. In February 1997, a jury convicted Rhodes of aggravated
sexual assault in Hardin County, Texas, and assessed punishment at 45 years
confinement. In September 1999, while serving his sentence for the aggravated
sexual assault conviction, authorities transferred Rhodes to Smith County on a bench
warrant, to answer for a theft offense. While in Smith County, Rhodes escaped from
custody (“the Smith County escape”). Police apprehended Rhodes. The State
charged him with escape and theft. Rhodes pleaded guilty to both offenses, and he
was convicted in May 2000. The trial court’s judgment for the Smith County escape
states, “It is further adjudged and decreed by this court that the sentence pronounced
herein shall begin May 8, 2000.” The trial court thus ordered the Smith County
escape sentence to run concurrently with Rhodes’s existing aggravated sexual assault
sentence.
Whether the 1999 Sentence was “Authorized by Law”
          In this appeal, Rhodes contends that his Smith County escape conviction is
void because the trial court ordered it to run concurrently with, rather than
consecutively to, the aggravated sexual assault offense that Rhodes was serving in
TDCJ-ID at the time he escaped in 1999. In particular, Rhodes maintains that the trial
court erred in refusing to quash the State’s indictment, because his sentence for the
Smith County escape is in contravention of the Texas Code of Criminal Procedure,
which mandates that the sentence run consecutively. See Tex. Code Crim. Proc.
Ann. art. 42.08(b) (Vernon 2004). 
          The issue before this Court is whether Article 42.08(b), which provides that a
sentence must run consecutively if an inmate commits a criminal offense while
incarcerated in a TDCJ-ID prison, requires that the offender commit the offense while
physically located within the prison – as the State contends – or whether Article
42.08(b) applies to any offense committed by an inmate currently serving his sentence
within the TDCJ-ID, regardless of his temporal location at the time of the offense. 
The issue is one of first impression in Texas courts. 
          Article 42.08(b) provides:
If a defendant is sentenced for an offense committed while
the defendant was an inmate in the institutional division of
the Texas Department of Criminal Justice and the
defendant has not completed the sentence he was serving
at the time of the offense, the judge shall order the sentence
for the subsequent offense to commence immediately on
completion of the sentence for the original offense.

Id. In the trial court, Rhodes moved to quash his indictment, contending that he was
an inmate in the TDCJ-ID, serving a sentence for aggravated sexual assault, at the
time he escaped in Smith County, and thus the trial court’s failure to run the escape
conviction consecutively to the 45-year sexual assault prison sentence renders the
Smith County escape sentence void. See id.; Fullbright v. State, 818 S.W. 2d 808,
810 (Tex. Crim. App. 1991) (holding that an aggravated assault conviction used to
enhance an aggravated robbery conviction was unauthorized by law and thus “void,”
because the aggravated assault sentence of five years probation was not within the
statutory punishment range, despite the fact that the sentence was more lenient than
the statutory punishment range).


 After considering evidence and the arguments of
counsel, the trial court denied Rhodes’s motion, observing that this issue presents “a
beautiful appellate question.”
          The State concedes that, if the trial court erred in failing to stack the Smith
County escape sentence, then it cannot rely upon that conviction to enhance Rhodes’s
convictions that are on appeal here. See Fullbright, 818 S.W.2d at 810. It responds,
however, that the Smith County escape sentence correctly ran concurrently because,
at the time Rhodes escaped in Smith County, he was not an “inmate in the
institutional division of the Texas Department of Criminal Justice” as contemplated
by Article 42.08(b) of the Code of Criminal Procedure. The State maintains that
Rhodes was not an “inmate” for Article 42.08(b) purposes because he escaped while
temporarily housed at the Smith County Jail on a bench warrant, and was not
physically in an institutional division facility at the time of his escape.
          Our objective in interpreting a statute is to adhere to the collective intent or
purpose of the legislators who enacted it. Griffith v. State, 116 S.W.3d 782, 785 (Tex.
Crim. App. 2003). When a statute is clear and unambiguous, courts should not strain
the plain meaning of the wording in order to give the statute a different reading. 
Smith v. State, 789 S.W.2d 590, 592 (Tex. Crim. App. 1991). We interpret an
unambiguous statute literally, unless such a construction results in absurd
consequences. See State v. Gutierrez, 129 S.W.3d 113, 114 (Tex. Crim. App. 2004). 
 If a statute may be reasonably interpreted in two different ways, we consider the
consequences of the two interpretations in determining which interpretation to adopt,
keeping in mind that if one interpretation yields absurd results while the other yields
no absurdities, the latter interpretation is preferred. Griffith, 116 S.W.3d at 785. We
also turn to the statute’s legislative history for clarification. Murdock v. State, 870
S.W.2d 41, 42 (Tex. Crim. App. 1993).
          The literal language of Article 42.08 – “while the defendant was an inmate in
the institutional division” – is subject to two possible interpretations: it can require
stacking only for offenses an inmate commits while physically housed in the 
TDCJ-ID institution, or it could require stacking for any offense an inmate commits
during the time he is an inmate processed into the institutional division, and actually
serving a sentence in the institutional division, but who commits the offense in
another location. See e.g., Tex. Pen. Code Ann. §§ 12.31(a), 12.32(a), 12.33(a),
12.34(a), 12.35© (Vernon 2003) (providing for imprisonment in the institutional
division for capital, first, second, and third degree felonies, and, under certain
circumstances, state jail felonies). In interpreting Article 42.08, we consider its
legislative history, related statutes, and the consequences of the alternate
interpretations. Griffith, 116 S.W.3d at 785; Murdock, 870 S.W.2d at 42.
Statutory Intent and Legislative History
          The Texas Court of Criminal Appeals has explained that “[t]he obvious intent
of Article 42.08(b) is to deter inmates from committing crimes during their
incarceration and to more harshly punish those inmates who are not deterred.” 
Basden v. State, 897 S.W.2d 319, 321 (Tex. Crim. App. 1995) (emphasis added). 
Before the Legislature enacted Article 42.08(b), inmates who committed a crime
while serving a sentence in the TDCJ-ID, and were convicted of that crime while still
serving their sentence, were often allowed to serve the two sentences concurrently.


 
House Comm. On Law Enforcement, Bill Analysis, Tex. S.B. 186, 69th Leg.,
R.S. (1985). Inmates therefore had no effective incentive to refrain from engaging
in criminal conduct while serving their sentences, as they suffered no actual
consequences (other than loss of good time) for their later crimes, because their
subsequent sentence often ran concurrently with their original sentence. Id. The
House Committee on Law Enforcement explained that it intended Article 42.08(b)
to provide inmates with a strong incentive to refrain from engaging in criminal
conduct while serving a sentence in TDC. Id. (emphasis added). The State’s
interpretation that stacking the sentence turns on the temporary physical location of
the defendant, and not on the defendant’s status as an inmate in the institutional
division, is inconsistent with the Legislature’s intent and purpose in enacting Article
42.08(b), and inconsistent with precedent from the Court of Criminal Appeals. See
Basden, 897 S.W.2d at 321-22 (“Any interpretation of Article 42.08(b) that results
in creating a situation whereby inmates can commit crimes with impunity simply
because they are in prison is absurd and should not be adopted by this Court.”).
          Article 42.08 of the Code of Criminal Procedure does not specifically define
the term “inmate.” The Texas Court of Criminal Appeals has, however, held that the
plain meaning of the term “inmate” is “a ‘person confined to a prison, penitentiary,
or the like.’” In re Russell, 60 S.W.3d 875, 877 (Tex. Crim. App. 2001) (quoting
Black’s Law Dictionary 788 (6th ed. 1990)). See also Boykin v. State, 818
S.W.2d 782, 785 (Tex. Crim. App. 1991) (courts to give effect to plain meaning of
a statutory provision, unless application of the plain meaning would lead to absurd
results). The Russell Court also recognized that other statutory provisions generally
define inmate as “one who is housed in or confined to a correctional facility.” 
Russell, 60 S.W.3d at 876-77. It is undisputed that, at the time of his Smith County
escape, Rhodes was confined to a TDCJ-ID facility, regardless of the fact that he
escaped while temporarily located at the county jail.



          In support of its contention that mandatory stacking does not apply to inmates
who escape while in court on a bench warrant, the State relies upon Articles 56.12
and 60.08 of the Code of Criminal Procedure.


 Both Article 56.12 and Article 60.08
recognize that an inmate or offender temporarily may be transferred from the
TDCJ-ID to the custody of a peace officer, pursuant to a bench warrant. Neither of
these statutes, however, provides that an inmate who temporarily leaves the physical
confines of a TDCJ-ID institution ceases to be an “inmate in the institutional division
of the Texas Department of Criminal Justice” as contemplated by Article 42.08(b). 
For example, Article 56.12 requires notice to past victims of an escape or a temporary
change in the offender’s place of confinement. See Tex. Code Crim. Proc. Ann. art.
56.12 (Vernon Supp. 2004). Similarly, Article 60.08 requires a court that decides to
release an offender who is on a bench warrant to notify TDCJ-ID of the release. See
Tex. Code Crim. Proc. Ann. art. 60.08(e) (Vernon Supp. 2004). Article 60.08 thus
does not support the concept that a TDCJ-ID offender loses inmate status while
temporarily absent to answer a bench warrant.
          The State called David Weeks during the pretrial hearing to testify about his
understanding of the legislative history of Article 42.08. Although not a legislator,
Weeks testified that he had some involvement in drafting and introducing the
legislation, and he testified in support of the bill. In Weeks’s view, the Legislature
intended that Article 42.08 apply only to crimes committed within the physical
confines of the prison unit. The House Committee on Law Enforcement’s Report on
Article 42.08, however, is silent regarding any Legislative intent to exempt offenses
an inmate commits while temporarily transferred on a bench warrant. House Comm.
On Law Enforcement, Committee Report, Tex. S.B. 186, 69th Leg., R.S. (1985). 
“[I]n assessing the legislative purpose, a court cannot assume that the selected
statements of a few legislators, even the sponsors of the legislation, reflected the
motivation of the entire Legislature.” Holberg v. State, 38 S.W.3d 137, 140 (Tex.
Crim. App. 2001). Weeks was not a member of the Legislature, and the legislative
history is silent on the subject; thus, his testimony as to the Legislature’s intent in
enacting Article 42.08(b) is not determinative. See Holberg, 38 S.W.3d at 140; Tex.
Dept. Pub. Safety v. Kreipe, 29 S.W.3d 334, 338 (Tex. App.—Houston [14th Dist.]
2000, pet. denied).
Consequences of the Two Interpretations
          Giving effect to the State’s interpretation of Article 42.08(b) in this one case
leads to nonsensical results. First, it creates an inconsistency between similarly
situated inmates who are serving prison sentences, by punishing those who commit
offenses within the TDCJ-ID facility more harshly than those who commit offenses
in non-TDCJ-ID facilities, or while outside the walls of the prison unit. Second, such
an interpretation allows an inmate serving a prison sentence, but temporarily outside
the prison walls, to commit crimes without fear of mandatory additional punishment,
under conditions that perhaps favor the possibility of success.


 If the attempt is
unsuccessful, an inmate could simply plead guilty, and receive a sentence to run
concurrent with the sentence he currently serves, as Rhodes did here in connection
with his Smith County escape – his first of two escapes. Considering the purposes
of Article 42.08(b), we doubt that the Legislature intended such a consequence,
particularly when the applicability of the statute does not turn on the physical location
of the offender, but rather on the offender’s status as an “inmate.”
          We hold that Article 42.08(b) requires a court to stack the sentence for an
offense committed by an inmate if that inmate (1) has been processed into the TDCJ-ID, and (2) is serving a sentence currently confining him in the institutional division
of the Texas Department of Criminal Justice, regardless of the inmate’s temporal
physical location at the time he commits the offense. This interpretation is consistent
with the pronouncement by Texas Court of Criminal Appeals that “[t]he obvious
intent of Article 42.08(b) is to deter inmates from committing crimes during their
incarceration and to more harshly punish those inmates who are not deterred.” 
Basden, 897 S.W.2d at 321. Article 42.08(b) required Rhodes’s Smith County escape
conviction to run consecutive to his aggravated sexual assault conviction, and thus,
as the State concludes, Fullbright requires that we hold that the trial court erred in
refusing to quash the first enhancement portion of the indictment. Fullbright, 818
S.W.2d at 810.
The Harm Analysis
          The jury found both enhancement allegations to be true, and applied a
punishment range from 25 to 99 years, or life imprisonment. Rhodes contends that
the jury’s verdict evidences harm because it assessed punishment at the minimum of
the range allowed for the burglary and theft (25 years), and near the minimum for the
Walker County escape (33 years). Had the trial court granted his motion to quash, the
indictment would have contained one enhancement allegation, with a punishment
range from two to 20 years for the theft and escape, and five to 99 years, or life
imprisonment for the burglary. Because the jury assessed punishment at more than
the maximum that should have been allowed by the court’s charge on the escape and
theft convictions, and the minimum erroneously authorized for the burglary
conviction, we are unable to conclude that the error is harmless, and thus remand this
case for a new punishment hearing. See Id. at 811.

Conclusion
          We conclude that the trial court should have quashed the portion of the
indictment with respect to an enhancement for the Smith County escape because the
sentence for the Smith County escape should have run consecutively, rather than
concurrently. We therefore reverse the judgment of the trial court and remand the
counts for a new punishment hearing.



                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.

En banc consideration was requested.

A majority of the justices of the Court voted to overrule the request for en banc
consideration.

Justice Keyes dissenting from the overruling of the request for en banc consideration,
joined by Justice Jennings. 

Publish. Tex. R. App. P. 47.2(b).