Terry RHODES, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–03–00327–CR, 01–04–00739–CR, 01–04–00740–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 14, 2004.

Rehearing Overruled July 27, 2005.

Kelly Gatewood, State Counsel for Offenders, Huntsville, TX, for Appellant.

Melinda Mayo, Special Prosecution Unit, Amarillo, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

In one indictment containing three separate counts, the State charged appellant Terry Rhodes with the felony offenses of escape, burglary of a habitation, and theft. The indictment includes two punishment enhancement paragraphs. The first alleges a previous conviction for felony escape in Smith County, and the second alleges a previous conviction for felony burglary of a habitation. Rhodes

pleaded guilty to the charged offenses, and not true to the enhancement paragraphs. The trial court convicted Rhodes of the three offenses, and a jury found both enhancement paragraphs true. The jury assessed punishment at 33 years' confinement for the escape, 25 years' confinement for the burglary, and 25 years' confinement for the theft. The trial court ordered the three convictions to run consecutively with a 45–year prison sentence Rhodes is serving for an aggravated sexual assault conviction.

We conclude that Rhodes "was an inmate in the institutional division of the Texas Department of Criminal Justice" at the time he committed his earlier Smith County escape offense, and thus the trial court in the earlier escape case should have run that escape sentence consecutively to the sentence for aggravated sexual assault Rhodes was then serving. Tex. Code Crim. Proc. Ann. art. 42.08(b) (Vernon Supp.2004). It did not. As such, as the State concedes, the earlier sentence was not "authorized by law," under *Fullbright v. State*, 818 S.W.2d 808 (Tex.Crim.App. 1991). We therefore conclude that the State cannot use Rhodes's earlier Smith County escape conviction to enhance Rhodes's sentences for the three convictions in this case, and we remand for a new punishment hearing.

## Facts and Procedural Background

*Facts*

In August 2000, Rhodes escaped from the Wynne Unit of the Texas Department of Criminal Justice—Institutional Division (TDCJ–ID) in Walker County, Texas. He stole a diesel semi-truck and drove it through the fence surrounding the prison, undeterred by a prison guard's firing of gunshots at the truck. Rhodes abandoned the truck at a truck stop. Rhodes evaded capture for approximately one week. During that time, Rhodes broke into a trailer, and stole food and clothing. He also stole a tractor, which he drove into a swamp, whereupon authorities apprehended him.

*Previous Criminal History*

The resolution of this appeal involves Rhodes's enhancement convictions, and thus we detail his criminal record. In January 1997, Rhodes pleaded guilty and was convicted of burglary of a habitation in Angelina County, Texas and was sentenced to three years confinement. In February 1997, a jury convicted Rhodes of aggravated sexual assault in Hardin County, Texas, and assessed punishment at 45 years confinement. In September 1999, while serving his sentence for the aggravated sexual assault conviction, authorities transferred Rhodes to Smith County on a bench warrant, to answer for a theft offense. While in Smith County, Rhodes escaped from custody ("the Smith County escape"). Police apprehended Rhodes. The State charged him with escape and theft. Rhodes pleaded guilty to both offenses, and he was convicted in May 2000. The trial court's judgment for the Smith County escape states, "It is further adjudged and decreed by this court that the sentence pronounced herein shall begin May 8, 2000." The trial court thus ordered the Smith County escape sentence to run concurrently with Rhodes's existing aggravated sexual assault sentence.

## Whether the 1999 Sentence was "Authorized by Law"

In this appeal, Rhodes contends that his Smith County escape conviction is void because the trial court ordered it to run concurrently with, rather than consecutively to, the aggravated sexual assault offense that Rhodes was serving in TDCJ–ID at the time he escaped in 1999. In particular, Rhodes maintains that the trial court erred in refusing to quash the State's

indictment, because his sentence for the Smith County escape is in contravention of the Texas Code of Criminal Procedure, which mandates that the sentence run consecutively. *See* Tex.Code Crim. Proc. Ann. art. 42.08(b) (Vernon 2004).

The issue before this Court is whether Article 42.08(b), which provides that a sentence *must* run consecutively if an inmate commits a criminal offense while incarcerated in a TDCJ–ID prison, requires that the offender commit the offense while physically located within the prison—as the State contends—or whether Article 42.08(b) applies to any offense committed by an inmate currently serving his sentence within the TDCJ–ID, regardless of his temporal location at the time of the offense. The issue is one of first impression in Texas courts.

Article 42.08(b) provides:

If a defendant is sentenced for an offense committed while the defendant was an inmate in the institutional division of the Texas Department of Criminal Justice and the defendant has not completed the sentence he was serving at the time of the offense, the judge shall order the sentence for the subsequent offense to commence immediately on completion of the sentence for the original offense.

*Id.* In the trial court, Rhodes moved to quash his indictment, contending that he was an inmate in the TDCJ–ID, serving a sentence for aggravated sexual assault, at the time he escaped in Smith County, and thus the trial court's failure to run the escape conviction consecutively to the 45–year sexual assault prison sentence renders the Smith County escape sentence void. *See id.; Fullbright v. State,* 818 S.W.2d 808, 810 (Tex.Crim.App.1991) (holding that an aggravated assault conviction used to enhance an aggravated robbery conviction was unauthorized by law and thus "void," because the aggravated assault sentence of five years probation was not within the statutory punishment range, despite the fact that the sentence was more lenient than the statutory punishment range).[1] After considering evi-

---

1. In its brief, the State concedes *Fullbright's* applicability to this case. In *Fullbright,* the Texas Court of Criminal Appeals held that the State may not rely upon a punishment that is "not authorized by law" for enhancement purposes, even if the punishment is more lenient than that authorized. The Court later abrogated its decision in *Fullbright,* and held that the sentence and the conditions for community supervision are different parts of the judgment, and thus, an error in the conditions of community supervision does not render the conviction void. *Speth v. State,* 6 S.W.3d 530, 532–33 (Tex.Crim.App.1999); *see also Ex Parte Williams,* 65 S.W.3d 656, 657–58 (Tex. Crim.App.2001) (concluding that illegal grant of community supervision should not be applied to rule governing illegal sentences).

The Court of Criminal Appeals, however, continued to uphold the rule of law that "if a punishment is not authorized by law, that portion of the sentence imposing that punishment is void" in *Speth* and *Ex Parte Williams.*

*See Speth,* 6 S.W.3d at 531 (citations omitted). As the Court of Criminal Appeals explained:
 [T]he case law ... involving "void" sentences has viewed legislatively defined sentencing schemes that are explicit about the applicable range or category of punishment as absolute, systemic features of the system, such that their application cannot be waived. That is, a defendant's "right" to be sentenced to a term within the defined "universe of punishments applicable to the offense" is absolute and nonwaiveable.

*Speth,* 6 S.W.3d at 533 n. 5. As the State conceded in its brief, *Fullbright* thus remains applicable here, because the Court of Criminal Appeals has defined a "sentence" to include whether it is to run concurrently or consecutively, as that is part of its execution. *See State v. Ross,* 953 S.W.2d 748, 750 (Tex. Crim.App.1997) ("[T]he sentence in this case would include the facts that appellant is to serve 16 years in the penitentiary ... *that his term is concurrent,* and that he must pay a $500 fine.") (emphasis added). The dissent

dence and the arguments of counsel, the trial court denied Rhodes's motion, observing that this issue presents "a beautiful appellate question."

The State concedes that, if the trial court erred in failing to stack the Smith County escape sentence, then it cannot rely upon that conviction to enhance Rhodes's convictions that are on appeal here. *See Fullbright,* 818 S.W.2d at 810. It responds, however, that the ,Smith County escape sentence correctly ran concurrently because, at the time Rhodes escaped in Smith County, he was ,not an "inmate in the institutional division of the Texas Department of Criminal Justice" as contemplated by Article 42.08(b) of the Code of Criminal Procedure. The State maintains that Rhodes was not an "inmate" for Article 42.08(b) purposes because he escaped while temporarily housed at the Smith County Jail on a bench warrant, and was not physically in an institutional division facility at the time of his escape.

 Our objective in interpreting a statute is to adhere to the collective intent or purpose of the legislators who enacted it. *Griffith v. State,* 116 S.W.3d 782, 785 (Tex.Crim.App.2003). When a statute is clear and unambiguous, courts should not strain the plain meaning of the wording in order to give the statute a different reading. *Smith v. State,* 789 S.W.2d 590, 592 (Tex.Crim.App.1990). We interpret an unambiguous statute literally, unless such a construction results in absurd consequences. *See State v. Gutierrez,* 129 S.W.3d 113, 114 (Tex.Crim.App.2004). If a statute may be reasonably interpreted in two different ways, we consider the consequences of the two interpretations in determining which interpretation to adopt, keeping in mind that if one interpretation yields absurd results while the other yields no absurdities, the latter interpretation is preferred. *Griffith,* 116 S.W.3d at 785. We also turn to the statute's legislative history for clarification. *Murdock v. State,* 870 S.W.2d 41, 42 (Tex.Crim.App.1993).

· The literal language of Article 42.08— "while the defendant was an inmate in the institutional division"—is subject to two possible interpretations: it can require stacking only for offenses an inmate commits while physically housed in the TDCJ–ID institution, or it could require stacking for any offense an inmate commits during the time he is an inmate processed into the institutional division, and actually serving a sentence in the institutional division, but who commits the offense in another location. *See e.g.,* Tex. Pen.Code Ann. §§ 12.31(a), 12.32(a), 12.33(a), 12.34(a), 12.35© (Vernon 2003) (providing for imprisonment in the institutional division for capital, first, second, and third degree felonies, and, under certain circumstances, state jail felonies). In interpreting Article 42.08, we consider its legislative history, related statutes, and the consequences of the alternate interpretations. *Griffith,* 116 S.W.3d at 785; *Murdock,* 870 S.W.2d at 42.

*Statutory Intent and Legislative History*

The Texas Court of Criminal Appeals has explained that "[t]he obvious intent of Article 42.08(b) is to deter inmates from committing crimes *during their incarceration* and to more harshly punish those inmates who are not deterred." *Basden v.*

from our court's denial of en banc review argues that *Speth* "impliedly" overrules *Ross.* We cannot agree, because the Court of Criminal Appeals expressly relied upon *Ross* in its decision in *Speth.* *See Speth,* 6 S.W.3d at 532 and note 4 (relying on *Ross,* contrasting com-

munity supervision, which is not part of a sentence, with "orders that the punishment be carried into execution in the manner prescribed by law."); *see also* Tex.Code Crim. Proc. Ann. Art. 42.02 (Vernon 2002).

*State,* 897 S.W.2d 319, 321 (Tex.Crim.App. 1995) (emphasis added). Before the Legislature enacted Article 42.08(b), inmates who committed a crime while serving a sentence in the TDCJ–ID, and were convicted of that crime while still serving their sentence, were often allowed to serve the two sentences concurrently.[2] HOUSE COMM. ON LAW ENFORCEMENT, BILL ANALYSIS, Tex. S.B. 186, 69th Leg., R.S. (1985). Inmates therefore had no effective incentive to refrain from engaging in criminal conduct while serving their sentences, as they suffered no actual consequences (other than loss of good time) for their later crimes, because their subsequent sentence often ran concurrently with their original sentence. *Id.* The House Committee on Law Enforcement explained that it intended Article 42.08(b) to provide inmates with a strong incentive to refrain from engaging in criminal conduct while *serving* a sentence in TDC. *Id.* (emphasis added). The State's interpretation that stacking the sentence turns on the temporary physical location of the defendant, and not on the defendant's status as an inmate in the institutional division, is inconsistent with the Legislature's intent and purpose in enacting Article 42.08(b), and inconsistent with precedent from the Court of Criminal Appeals. *See Basden,* 897 S.W.2d at 321–22 ("Any interpretation of Article 42.08(b) that results in creating a situation whereby inmates can commit crimes with impunity simply because they are in prison is absurd and should not be adopted by this Court.").

Article 42.08 of the Code of Criminal Procedure does not specifically define the term "inmate." The Texas Court of Criminal Appeals has, however, held that the plain meaning of the term "inmate" is "a 'person confined to a prison, penitentiary, or the like.'" *In re Russell,* 60 S.W.3d 875, 877 (Tex.Crim.App.2001) (*quoting* BLACK'S LAW DICTIONARY 788 (6th ed.1990)). *See also Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991) (courts to give effect to plain meaning of a statutory provision, unless application of the plain meaning would lead to absurd results). The *Russell* Court also recognized that other statutory provisions generally define inmate as "one who is housed in or confined to a correctional facility." *Russell,* 60 S.W.3d at 876–77. It is undisputed that, at the time of his Smith County escape, Rhodes was confined to a TDCJ–ID facility, regardless of the fact that he escaped while temporarily located at the county jail.[3]

In support of its contention that mandatory stacking does not apply to inmates who escape while in court on a bench warrant, the State relies upon Articles 56.12 and 60.08 of the Code of Criminal Procedure.[4] Both Article 56.12 and Article

**2.** The Texas Department of Corrections was renamed the Texas Department of Criminal Justice after the enactment of Article 44.08(b). In 1993, Article 44.08 was amended to reflect the name change. *See* Act of May 29, 1993, 73rd Leg., R.S. ch. 900, § 5.03, 1993 Tex. Gen. Laws 3586, 3752 (amending Article 42.08 to make conforming changes).

**3.** Inmate generally connotes the offender's permanent institutional status, not his temporary physical location. For example, Article 42.19, the Interstate Corrections Compact, defines an inmate as "a male or female offender who is committed, under sentence to

or confined in a penal or correctional institution." TEX.CODE CRIM. PROC. ANN. art. 42.19 (Vernon Supp.2004). *Compare with* TEX. GOV'T CODE ANN. § 508.081 (Vernon 1998) (providing that term "inmate" for purposes of that chapter includes an "(A) an administrative releasee; (B) an inmate imprisoned in the institutional division; and © a person confined in a transfer facility or county jail awaiting: (I) transfer to the institutional division; or (ii) a revocation hearing.").

**4.** Article 56.12 of the Code of Criminal Procedure provides as follows:

60.08 recognize that an inmate or offender temporarily may be transferred from the TDCJ–ID to the custody of a peace officer, pursuant to a bench warrant. Neither of these statutes, however, provides that an inmate who temporarily leaves the physical confines of a TDCJ–ID institution ceases to be an "inmate in the institutional division of the Texas Department of Criminal Justice" as contemplated by Article 42.08(b). For example, Article 56.12 requires notice to past victims of an escape or a temporary change in the offender's place of confinement. *See* TEX.CODE CRIM. PROC. ANN. art. 56.12 (Vernon Supp.2004). Similarly, Article 60.08 requires a court that decides to release an offender who is on a bench warrant to notify TDCJ–ID of the release. *See* TEX.CODE CRIM. PROC. ANN. art. 60.08(e) (Vernon Supp.2004). Article 60.08 thus does not support the concept that a TDCJ–ID offender loses inmate status while temporarily absent to answer a bench warrant.

■ The State called David Weeks during the pretrial hearing to testify about his understanding of the legislative history of Article 42.08. Although not a legislator, Weeks testified that he had some involvement in drafting and introducing the legislation, and he testified in support of the bill. In Weeks's view, the Legislature intended that Article 42.08 apply only to crimes committed within the physical confines of the prison unit. The House Committee on Law Enforcement's Report on

(a) The Texas Department of Criminal Justice shall immediately notify the victim of an offense ... whenever the offender:
(1) escapes from a facility operated by the institutional division; or
(2) *is transferred from the custody of the institutional division to the custody of a peace officer under a writ of attachment or a bench warrant.*
TEX.CODE CRIM. PROC. ANN. art. 56.12 (Vernon Supp.2004) (emphasis added). Article 60.08(e) provides as follows:

Article 42.08, however, is silent regarding any Legislative intent to exempt offenses an inmate commits while temporarily transferred on a bench warrant. HOUSE COMM. ON LAW ENFORCEMENT, Committee Report, Tex. S.B. 186, 69th Leg., R.S. (1985). "[I]n assessing the legislative purpose, a court cannot assume that the selected statements of a few legislators, even the sponsors of the legislation, reflected the motivation of the entire Legislature." *Holberg v. State,* 38 S.W.3d 137, 140 (Tex. Crim.App.2001). Weeks was not a member of the Legislature, and the legislative history is silent on the subject; thus, his testimony as to the Legislature's intent in enacting Article 42.08(b) is not determinative. *See Holberg,* 38 S.W.3d at 140; *Tex. Dept. Pub. Safety v. Kreipe,* 29 S.W.3d 334, 338 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

*Consequences of the Two Interpretations*

Giving effect to the State's interpretation of Article 42.08(b) in this one case leads to nonsensical results. First, it creates an inconsistency between similarly situated inmates who are serving prison sentences, by punishing those who commit offenses within the TDCJ–ID facility more harshly than those who commit offenses in non-TDCJ-ID facilities, or while outside the walls of the prison unit. Second, such an interpretation allows an inmate serving a prison sentence, but temporarily outside

A court that orders the release of an offender under Section 6(a), Article 42.12, of this code at a time when the offender is under a bench warrant and not physically imprisoned in the institutional division shall report the release to the institutional division of the Texas Department of Criminal Justice not later than the seventh day after the date of the release.
TEX.CODE CRIM. PROC. ANN. art. 60.08(e) (Vernon Supp.2004).

the prison walls, to commit crimes without fear of mandatory additional punishment, under conditions that perhaps favor the possibility of success.[5] If the attempt is unsuccessful, an inmate could simply plead guilty, and receive a sentence to run concurrent with the sentence he currently serves, as Rhodes did here in connection with his Smith County escape—his first of two escapes. Considering the purposes of Article 42.08(b), we doubt that the Legislature intended such a consequence, particularly when the applicability of the statute does not turn on the physical location of the offender, but rather on the offender's status as an "inmate."

■■■ We hold that Article 42.08(b) requires a court to stack the sentence for an offense committed by an inmate if that inmate (1) has been processed into the TDCJ–ID, and (2) is serving a sentence currently confining him in the institutional division of the Texas Department of Criminal Justice, regardless of the inmate's temporal physical location at the time he commits the offense. This interpretation is consistent with the pronouncement by Texas Court of Criminal Appeals that "[t]he obvious intent of Article 42.08(b) is to deter inmates from committing crimes during their incarceration and to more harshly punish those inmates who are not deterred." *Basden*, 897 S.W.2d at 321. Article 42.08(b) required Rhodes's Smith County escape conviction to run consecutive to his aggravated sexual assault conviction, and thus, as the State concludes, *Fullbright* requires that we hold that the trial court erred in refusing to quash the first enhancement portion of the indictment. *Fullbright*, 818 S.W.2d at 810.

### The Harm Analysis

The jury found both enhancement allegations to be true, and applied a punishment range from 25 to 99 years, or life imprisonment. Rhodes contends that the jury's verdict evidences harm because it assessed punishment at the minimum of the range allowed for the burglary and theft (25 years), and near the minimum for the Walker County escape (33 years). Had the trial court granted his motion to quash, the indictment would have contained one enhancement allegation, with a punishment range from two to 20 years for the theft and escape, and five to 99 years, or life imprisonment for the burglary. Because the jury assessed punishment at more than the maximum that should have been allowed by the court's charge on the escape and theft convictions, and the minimum erroneously authorized for the burglary conviction, we are unable to conclude that the error is harmless, and thus remand this case for a new punishment hearing. *See Id.* at 811.

### Conclusion

We conclude that the trial court should have quashed the portion of the indictment with respect to an enhancement for the Smith County escape because the sentence for the Smith County escape should have run consecutively, rather than concurrently. We therefore reverse the judgment of the trial court and remand the counts for a new punishment hearing.

En banc consideration was requested.

A majority of the justices of the Court voted to overrule the request for en banc consideration.

Justice KEYES dissenting from the overruling of the request for en banc consideration, joined by Justice JENNINGS.

---

**5.** It also would permit the argument that crimes committed by an inmate who has escaped should not be stacked because they did not occur inside the prison unit.

EVELYN V. KEYES, Justice, dissenting.

I respectfully dissent from denial of en banc consideration. The issue before this Court is whether Rhodes'a conviction for escape from prison in 1999 (the Smith County escape) should be used to enhance Rhodes' conviction for escape from prison in 2002, which Rhodes now appeals. In my view, the panel's opinion that the earlier escape sentence is void, and that the earlier escape conviction may not, therefore, be used to enhance appellant's current sentence, is erroneous and creates disunity between this Court's opinions and the current jurisprudence of this State, constituting an extraordinary circumstance that requires en banc consideration. *See* TEX.R.APP. P. 41.2(c) (providing that en banc consideration should be ordered only in extraordinary circumstances).

The panel holds that the trial court's 1999 order in the Smith County case that Rhodes' Smith County escape run concurrently with the sentence Rhodes was then serving for aggravated assault was an unauthorized, and thus void, "sentence" and that Rhodes' conviction for that escape cannot be used to enhance the penalty for his latest escape. The result of the panel's ruling is not only to void the enhancement paragraph for Rhodes' latest escape, but also, in effect, to void the sentence entered in the prior Smith County escape case. I would hold, in accordance with current jurisprudence, that the order that Rhodes' sentence for the Smith County escape run concurrently with the sentence he was then serving was not itself a "sentence," or even part of a sentence, but a cumulation order. As such, it is a separate part of the judgment entered with regard to that escape. Accordingly, even if the cumulation order is void, Rhodes' sentence for the Smith County escape is not void, and his conviction for that escape should be available to enhance his punishment for the instant escape. I would, therefore, affirm the judgment of the trial court.

In reaching the contrary conclusion—that Rhodes' "sentence" for his Smith County escape is void and that, therefore, Rhodes' prior conviction for escape may not be used to enhance his punishment in this case—the panel relies primarily on *Fullbright v. State,* 818 S.W.2d 808 (Tex. Crim.App.1991). In *Fullbright,* the Court of Criminal Appeals held that a prior probated sentence used for enhancement purposes was void because, as the panel here states, "the aggravated assault sentence of five years probation was not within the statutory punishment range." *Id.* at 810. The panel acknowledges that the Court of Criminal Appeals "later abrogated its decision in *Fullbright,* and held that the sentence and the conditions for community supervision are different parts of the judgment, and thus an error in the conditions of community supervision does not render the conviction void." *See Speth v. State,* 6 S.W.3d 530, 532–33 (Tex.Crim.App.1999); *Ex Parte Williams,* 65 S.W.3d 656, 657–58 (Tex.Crim.App.2001). Nevertheless, the panel fails to draw the distinction between a sentence and other parts of the judgment, a distinction that governed the disposition of *Speth* and *Ex parte Williams* and that applies here.

The problem arises from a gloss placed by the Court of Criminal Appeals on the "sentence" imposed in *State v. Ross,* 953 S.W.2d 748 (Tex.Crim.App.1997), a case decided after *Fullbright* and before *Speth.* In *Ross,* the Court of Criminal Appeals was called upon to construe article 42.02 of the Code of Criminal Procedure, which defines a sentence as "that part of the judgment, or order revoking a suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law."

TEX.CODE CRIM. PROC. ANN. art. 42.02 (Vernon 2004). The court pointed out that "the sentence used to encompass the entire judgment in that the sentence was 'the order of the court ... pronouncing the judgment and ordering the same to execute,'" but that the term "sentence" had been "significantly narrowed" over the years so that it had become "nothing more than the portion of the judgment setting out the terms of punishment." *Ross*, 953 S.W.2d at 750 (quoting *Thornton v. State*, 576 S.W.2d 407, 408 (Tex.Crim.App.1979)).

Comparing the definition of a sentence in article 42.02 of the Code of Criminal Procedure and the definition of a judgment in article 42.01, which includes affirmative findings and the terms of the sentence as separate parts of the information contained in a judgment, the Court of Criminal Appeals held that a finding that an assault was committed with a deadly weapon was part of the judgment, but not part of the sentence. *Id.; see also* TEX.CODE CRIM. PROC. ANN. art. 42.01 § 1(21) (Vernon Supp.2004–2005) (listing "[a]ffirmative findings" as separate part of judgment); § 1(15) (listing "term of sentence" as separate part of judgment). The court then added, "For example, the sentence in this case would include the *facts* that appellant is to serve sixteen years in the penitentiary beginning July 28, 1995, that his term is concurrent, and that he must pay a $500 fine." *Ross*, 953 S.W.2d at 750 (emphasis in original). The court thus included the "fact" that a sentence was "concurrent" in its illustration of the terms of the sentence. However, the court then immediately reiterated that the intent of the Legislature in defining the term "sentence" in article 42.02 was clearly to restrict the definition of that term and to exclude "those aspects of the judgment merely *affecting* those facts," such as affirmative findings. *Id.* (emphasis in original).

The panel in this case invokes the example given by the Court of Criminal Appeals in *Ross* as authority for its own argument that a sentence includes the terms for cumulation of sentences set out in the judgment; and, because the cumulation of sentences statute at issue here, article 48.02(b) of the Code of Criminal Procedure, does not authorize a court to order that a sentence for escape run concurrently with a sentence the defendant is already serving, the panel holds that Rhodes' sentence for the Smith County escape is void, and, therefore, Rhodes' prior escape conviction may not be used to enhance his current punishment.

I believe that, to the extent *Ross* holds—instead of merely observing in dictum—that the imposition of a concurrent sentence is itself part of the sentence, rather than a separate part of the judgment, that holding has been implicitly abrogated by later authority. The Court of Criminal Appeals revisited the distinction between a sentence and a judgment in *Speth*, 6 S.W.3d 530. This time, the court explicitly juxtaposed a sentence, as defined in article 42.02 of the Code of Criminal Procedure, to a judgment, as defined in article 42.01, noting that article 42.01, section one, of "[t]he Code defines 'judgment' as the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant" and that section one further provides that "[t]he sentence served shall be based on the information contained in the judgment." *Speth*, 6 S.W.3d at 535 n. 4 (citing TEX.CODE CRIM. PROC. ANN. art. 42.01 § 1). The court pointed out that, in setting out the information contained in the judgment, article 42.01 distinguishes between "the length of community supervision, and the conditions of supervision," provided for in subsection 1(10), and "[t]he term of the sentence," provided for in subsection 1(15). *Id.* at

532; *see also* Tex.Code Crim. Proc. Ann. art. 42.01, §§ 1(10), (15). The court concluded that, therefore, the conditions of community supervision specified in article 42.12, section 11(a) of the Code of Criminal Procedure and included in the judgment pursuant to article 42.01, subsection 10, were separate from the sentence included in the judgment under article 42.01, subsection 15.[1]

Just as the Court of Criminal Appeals held in *Speth* that placement of a defendant on community supervision under article 42.12, section 3(a) of the Code of Criminal Procedure was part of the judgment, but not part of the sentence, so I would hold in this case that a trial court's cumulation order under article 42.08(b) likewise is part of the judgment, but not part of the sentence. Like article 42.12, section 11(a), at issue in *Speth,* article 48.02(b), at issue here, provides information regarding the terms under which sentences shall be served in conformity with article 42.01's mandate that "[t]he sentence shall be served based on the information contained in the judgment." *See* Tex.Code Crim. Proc. Ann. art. 42.01, § 1; *see also Speth,* 6 S.W.3d at 535 n. 4 (distinguishing addition-

al information in the judgment from the sentence). Just as article 42.01, defining the parts of a judgment, expressly distinguishes the conditions of community supervision from "[t]he term of the sentence" set out in a judgment, so article 42.01 expressly distinguishes "[t]he term of any order entered pursuant to article 42.08 of this code that the defendant's sentence is to run cumulatively or concurrently with another sentence or sentences," from the "[t]he term of the sentence." Tex.Code Crim. Proc. Ann. art. 42.01, §§ 1(10), (15), (19).[2] By its terms, article 42.08 cannot and does not assess punishment for any crime; rather, it comprehensively prescribes the terms under which two or more sentences are cumulated in any given case. Thus, logically, article 42.08 does not set out a sentencing scheme, instead, it sets out terms for the cumulation of sentences; and an order under article 42.08 is not itself a sentence, but rather a cumulation order. Nor can an order cumulating sentences any longer be construed as a portion of a "sentence" under the plain language of articles 42.01 and 42.02 of the current Code of Criminal Procedure; instead, a cumulation order must be con-

---

**1.** Article 42.12 ("Community supervision") provides in relevant part:

> The judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.

Tex.Code Crim. Proc. Ann. art. 42.12, § 11(a). Article 42.01, "Judgment," sets out the "information contained in the judgment" in 27 discrete subparts, including § 1(10) (conditions of community supervision) and § 1(15) ("term of the sentence").

**2.** In *LaPorte v. State,* the Court of Criminal Appeals held, "An improper cumulation order is, in essence, a void sentence and such error cannot be waived" and that "[a] defect which renders a sentence void may be raised at any time." 840 S.W.2d 412, 415 (Tex.Crim.App. 1992). Given the subsequent abrogation of

cases in this line that conflate the terms of a sentence and the terms of a judgment—including *Heath,* 817 S.W.2d 335 (holding that a portion of a "sentence" not authorized by law, namely probation, is void), *abrogated by Ex parte Williams,* 65 S.W.3d 656 (Tex.Crim. App.2001), and *Ex parte Sims,* 868 S.W.2d 803 (Tex.Crim.App.1994) (holding that defendant could not waive right to have sentences run concurrently, even by consent), overruled by *Ex parte McJunkins,* 954 S.W.2d 39 (Tex. Crim.App.1997), as well as *Speth—LaPorte* appears to have been implicitly, although not explicitly, abrogated to the extent it equates a sentence with a conviction. To be consistent with *Speth, LaPorte* must be read as holding that a *cumulation order* not authorized by statute is void, not that either a sentence or a judgment in which sentences are improperly cumulated is void.

strued as a separate portion of the judgment.

I believe the current jurisprudence of this State requires us to conclude that a cumulation order under article 42.08(b) is not part of a sentence, but a separate part of the judgment. If that conclusion is correct, then, although a cumulation order may be void as not authorized by law, the sentence improperly cumulated, which is a separate part of the judgment, is not thereby made void, and the prior conviction may be used to enhance the punishment for a subsequent crime. I would hold that Rhodes' sentence for the Smith County escape is not void, even if the cumulation order that was part of his judgment of conviction for that escape is void, and that the prior conviction was properly used to enhance his sentence in the current case; and I would affirm the judgment of the trial court.

Because I believe the panel's opinion commits this Court to an erroneous interpretation of the Code of Criminal Procedure applicable to this and future cases, I respectfully dissent from denial of en banc consideration.